1 | Marc M. Seltzer (54534)
2 | mseltzer@susmangodfrey.com
  | SUSMAN GODFREY L.L.P.
3 | 1900 Avenue of the Stars, Suite 1400
  | Los Angeles, CA 90067-6029
4 | Phone: (310) 789-3100
  | Fax: (310) 789-3150

5 | [Additional Counsel on Signature Page]

6 | *Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION | Case No.: <br><br> (MDL Case No. 2:15-ml-02668-PSG (JEMx); pending in C.D. Cal.) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC** <br><br> **[REDACTED VERSION]** <br><br> Date: <br> Time: |

Please take notice that on a date and time to be determined by the Court, Plaintiffs will and hereby do move, pursuant to Federal Rule of Civil Procedure 45(d), for an order compelling non-party and California resident Google LLC to produce certain documents requested in the Subpoena to Produce Documents in a Civil Action served upon it on March 30, 2023 by Plaintiffs in *In re National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-PSG (JEMx), pending in the United States District Court for the Central District of California. In the alternative, Plaintiffs move to transfer the motion to the Central District of California pursuant to Fed. R. Civ. P. 45(d)(3)(A).

Plaintiffs move to compel Google to produce documents in the United States District Court for the Northern District of California, which is the district of compliance with the Subpoena pursuant to Rule 45(c)(2) of the Federal Rules of Civil Procedure. Pursuant to Civil Local Rule 37-1, counsel met and conferred regarding this motion on August 10, 2023.

Plaintiffs make this motion based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Tyler Finn in support thereof, the files and records in this case, and any argument as may be presented at the hearing on the Motion.

Dated: August 21, 2023              Respectfully submitted,

By: */s/ Marc M. Seltzer*
      Marc M. Seltzer

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Tyler Finn (*Pro Hac Vice pending*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC
1

Error! Unknown document property name.

1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC

2

**Error! Unknown document property name.**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Google, through its YouTube TV service, is the new exclusive provider of the NFL's "Sunday Ticket" package. The exclusivity of the rights to that package is at the core of Plaintiffs' claims in their underlying antitrust case against the NFL and its 32 teams about Sunday Ticket. Despite the centrality of Sunday Ticket to Plaintiffs' claims, Google refuses to produce any meaningful discovery in response to Plaintiffs' subpoena on the subject.

Plaintiffs represent two *certified* classes of subscribers to Sunday Ticket that seek not only monetary damages from the NFL and its member clubs, but injunctive relief that will likely impact Google's contract with the NFL for the rights to the Sunday Ticket package. Since 2015, the case has proceeded as a multidistrict litigation in the Central District of California. Trial is set for February 22, 2024. On December 21, 2022, Google and the NFL reached an agreement that granted Google's subsidiary YouTube the exclusive distribution rights to Sunday Ticket through the 2030 NFL season.

Google is not a party to the litigation but its status as rightsholder makes it subject to any injunctive relief ordered by the MDL Court. And the terms of the new Google-NFL agreement bear directly on Plaintiffs' claims that the NFL has restricted competition in the market for broadcasts of professional football games. The same is true of the negotiations that preceded that agreement. In fact, the MDL Court has twice held that discovery into those negotiations is relevant to the litigation. First, it compelled the NFL to produce negotiation-related documents after the fact-discovery cutoff. Second, recognizing that a new agreement would be signed after the close of fact discovery, the MDL Court amended the schedule to allow Plaintiffs to seek discovery from third parties like Google.

In accordance with those rulings, Plaintiffs served Google with a subpoena for documents shortly after the deal between Google and the NFL was publicly

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC
1

announced. The subpoena seeks evidence of Google's negotiations with the NFL on several subjects directly relevant to Plaintiffs' claims, namely restrictions imposed by the NFL as to the retail price, package characteristics, and number of subscribers to Sunday Ticket.

The parties then met-and-conferred for four months, during which Plaintiffs significantly narrowed the scope of the subpoena. Despite Plaintiffs' repeated efforts at compromise, Google produced only three documents—summary presentations about its agreement with the NFL. The three documents are plainly relevant to Plaintiffs' claims, but they do not even scratch the surface of relevant discovery. Google nonetheless refuses to produce any more.

By this motion, Plaintiffs seek Google's documents about the various proposals and counterproposals exchanged with the NFL during the negotiation period, which lasted approximately nine months. These documents will shed light on the restrictions that the NFL places on Sunday Ticket that are not expressly reflected in the YouTube agreement—for example the requirement that Sunday Ticket be sold at a high price to fans. Plaintiffs have proposed a reasonable protocol to capture those documents: a search of the electronic files of only six Google employees who took part in the negotiations. But Google refuses to conduct any custodial searches. Given Google's proximity to this litigation, the relevance of the documents sought, and the minimal burden associated with Plaintiffs' request, this Court should compel Google to do so. In the alternative, this Court should transfer this motion to the MDL Court, which is more familiar with the issues and has adjudicated a number of similar discovery motions.

## II. FACTUAL BACKGROUND

Plaintiffs bring this antitrust case against the NFL, its 32 member clubs, and DirecTV based on a series of "interlocking agreements that work together to suppress competition for the sale of professional football game telecasts in violation of

Sections 1 and 2 of the Sherman Act." Dkt. 894[1] at 2 (Class Certification Order). These agreements work two different, but symbiotic, restraints: they prohibit all distributors other than DirecTV (now YouTube) from offering telecasts of out-of-market Sunday afternoon NFL games, and they bar the clubs from separately licensing their own broadcast rights. Dkt. 441 (Second Consolidated Amended Complaint) ¶¶ 11. Together these restraints ensure that fans who wish to watch the majority of regular season NFL games, or any out-of-market NFL game, have only one option available to them—subscribing to the NFL Sunday Ticket package from a single provider. *Id*. ¶ 8. These restraints on competition result in supracompetitive prices for NFL Sunday Ticket, reduced choice in the marketplace, and drastically fewer games available to all consumers. *Id*. ¶¶ 10-12, 19. Plaintiffs seek upwards of $6 billion in monetary damages. Dkt. 894 at 11.

On February 7, 2023, the Central District of California granted Plaintiffs' motion to certify two classes—encompassing all residential and commercial subscribers that purchased NFL Sunday Ticket between June 17, 2011 and the date of the certification order. Dkt. 894. These certified classes seek injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) and money damages pursuant to Fed. R. Civ. P. 23(b)(3). *Id.* at 25.

During the class period, the NFL sold the rights to Sunday Ticket exclusively to DirecTV. On December 22, 2022, the NFL announced that it had reached a multi-billion-dollar agreement with Google to distribute Sunday Ticket to residential subscribers on YouTube TV. Beginning with the upcoming NFL season until the year 2030, NFL Sunday Ticket will be available exclusively on "Google-owned YouTube, behind a subscription paywall." *Id.* at 21.

---

[1] All citations to the docket refer to the underlying litigation, *In Re: National Football League's "Sunday Ticket" Antitrust Litigation*, No. 2:15-ml-02668-PSG (JEMx) (C.D. Cal).

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC
3

Google and the NFL had not yet executed the now-operative Sunday Ticket agreement by August 5, 2022, the deadline for fact discovery. Plaintiffs therefore moved the MDL Court to allow them to take further discovery of the agreement and the negotiations after the discovery cutoff. In that motion, Plaintiffs sought leave to "conduct discovery from the NFL Defendants *and the new third-party rightsholder* after an agreement is finally reached," and to conduct "a deposition of the new rightsholder, as contemplated by the parties' prior agreements on deposition limits." Dkt. 546-2 (emphasis added). On August 11, 2022, the MDL Court granted the requested relief and "modifie[d] the scheduling order to allow Plaintiffs to pursue additional discovery relating to the following matters after the August 5, 2022 fact discovery cut-off:

> Document production related to NFL Defendants' ongoing negotiations with third parties for the sale of the future rights to NFL Sunday Ticket, as well as document and deposition discovery about the new NFL Sunday Ticket agreement once such a deal is finalized[.]

Dkt. 607 at 4.

Plaintiffs also sought additional discovery on these issues from the NFL. On January 20, 2022, months before the fact discovery cut-off, Plaintiffs served a request for production that sought: "All presentations, analyses, strategic planning documents, and communications regarding the current negotiations for the rights to Sunday Ticket from January 1, 2021 to the present day (and continuing in nature pursuant to Rule 26(e))." Finn Declaration ¶ 3. When the NFL refused to supplement its earlier productions with documents responsive to that request, Plaintiffs moved the MDL Court for an order requiring the NFL to do so. The MDL Court granted that motion on September 12, 2022, overruling the NFL's objections that discovery about the new agreement was somehow irrelevant to the underlying antitrust case. Dkt. 645. At the hearing, the MDL Court specifically stated that it would be "appropriate for there to be discovery about both the agreement and about the negotiations with the various parties involved." Dkt. 613 at 17 (Hearing Transcript).

Pursuant to those orders, Plaintiffs subpoenaed Google—as well as several other third parties involved in the NFL's negotiations—on March 30, 2023. Ex. 1. The subpoena to Google contained eleven requests, each of which focused on the discussions between Google and NFL about the distribution of NFL Sunday Ticket.

Google submitted written responses and objections to that subpoena on April 13, 2023. Ex. 2. Google registered a nearly identical set of objections to each of Plaintiffs' eleven requests. These objections concerned the timeliness of the subpoena, the breadth of the documents sought, the relevance of the subject matters, the request for documents potentially in the custody of the NFL, and the disclosure of competitively sensitive information. *See id.*

The parties began the meet-and-confer process shortly thereafter. In the months that followed, Plaintiffs made various compromises in an attempt to narrow the scope of the subpoena and minimize any burden on Google. First, Plaintiffs agreed to exclude Google's communications with the NFL, thereby reducing the burden of collecting documents that would presumably be captured in the NFL's productions. Second, Plaintiffs agreed to narrow their proposal to Google's internal documents concerning: 1) the actual or proposed package characteristics of Sunday Ticket; 2) the retail price of Sunday Ticket; 3) the number of subscribers to Sunday Ticket; 4) restrictions imposed by the NFL's licensing agreements with CBS/Fox; 5) the valuation of Sunday-Ticket rights; and 6) the antitrust implications of the arrangement. Finn Decl. ¶ 6.

On June 20, 2023, after multiple discussions between the parties, Google agreed to produce three slideshow presentations that were responsive to the narrowed topics. *Id.* ¶ 7. Plaintiffs agreed to defer any discussion of custodial searches until after their review of Google's production. *Id.* That would allow Plaintiffs to determine whether supplementation was necessary.

Google produced three presentations on July 7, 2023, which redacted "certain highly sensitive business information that is not responsive to the requests" according

1   to Google. *Id.* ¶ 8. Each of the three presentations contained information that bears
2   directly on the litigation: ███████████████████████████████████████
3   ████████████████████████████████████████████████████████████
4   ████████████████████████████████████████████████████████████
5   ████████████████████████████████████████████████████████████
6   *Id.*
7       That production did not, however, provide information reflecting the various
8   proposals or counterproposals that were exchanged between Google and the NFL on
9   any of these various issues. *Id.* ¶ 9. Nor did it contain Google's internal analyses of
10  any proposals or requirements provided by the NFL. In fact, none of the documents
11  produced by Google predate November 28, 2022. *Id.* ████████████████████
12  ████████████████████████████████████████████████████████████
13  ████████████████████ *Id.* ¶ 10.
14      On July 25, 2023, Plaintiffs wrote to Google to indicate their intent to pursue
15  custodial discovery on these issues. *Id.* ¶ 11. The parties conferred on July 28, 2023.
16  Plaintiffs explained the relevance of the internal documents to the litigation and that
17  internal notes and analyses of meetings between the parties, many of which were
18  conducted in-person or over-the-phone, would not be available from the NFL. *Id.*
19  ¶ 12. At Google's request, Plaintiffs identified a narrow list of six custodians who
20  would likely possess relevant documents about the negotiations with the NFL. *Id.*
21  ¶ 13. On August 3, 2023, Google represented to Plaintiffs its position "that we have
22  produced documents responsive to the topics that you identified for us in earlier
23  conversations, and Google is not willing at this stage to produce anything further."
24  *Id.* ¶ 14. The parties conferred again on August 4, 2023. *Id.* ¶ 15. Plaintiffs explained
25  that the limited custodial search proposed was the most efficient and least
26  burdensome method to collect the relevant documents. The parties conferred once
27  more on August 10, 2023 but were unable to reach an agreement. *Id.* Google refuses
28

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC
6

to conduct any custodial searches in response to Plaintiffs' subpoena. Yet Google has provided no explanation for that refusal. *Id.*

### III. GOOGLE SHOULD PRODUCE DOCUMENTS CONCERNING ITS NEGOTIATIONS WITH THE NFL

#### A. Legal Standard

The scope of permissible discovery under a Rule 45 subpoena is the same as that under Rule 26—any matter that is relevant to a claim or defense and proportional to the needs of the case. *E.g., Erickson v. Builder Advisor Grp. LLC*, 2022 WL 1265823, at *2 (N.D. Cal. Apr. 28, 2022). Rule 45 also incorporates Rule 26's broad definition of relevance, encompassing information that is "reasonably calculated to lead to admissible evidence." *Gonzales v. Google*, Inc., 234 F.R.D. 674, 679-80 (N.D. Cal. 2006) (cleaned up). On a motion to compel discovery from a non-party, the moving party must first demonstrate that the information requested is within the scope of permissible discovery. *In re: Subpoena to Apple Inc.,* 2014 WL 2798863, at *2 (N.D. Cal. Jun 19, 2014). The burden then shifts to the party opposing discovery to show "that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Id*. (cleaned up).

#### B. The Requested Documents Are Relevant and Proportional

As a general matter, the MDL Court has already determined—in two separate contexts—that discovery about the 2022 negotiations for the rights to Sunday Ticket is relevant to the litigation and permissible. *See* Dkt. 645 (granting Plaintiffs' motion to compel documents on this subject from the NFL); Dkt. 607 (permitting discovery about the negotiations after the August 5, 2022 fact discovery cutoff). The specific discovery that Plaintiffs seek by this motion—documents reflecting or relating to any proposals or counterproposals exchanged by Google and the NFL and internal analyses of those proposals—bears directly on Plaintiffs' antitrust claims against the NFL and its Member Clubs.

Error! Unknown document property name.

1    Plaintiffs' core contention is that the NFL Defendants have conspired, and
2 continue to conspire, to restrict the availability of telecasts of live NFL games. These
3 restrictions take various forms. As relevant here, they include the requirement that
4 Sunday Ticket be sold to fans at a high price, that it be sold only as a package of all
5 out-of-market games without an option to purchase just the games of a single team
6 or a single division, and that Sunday Ticket be licensed to a single exclusive provider.
7 The purpose of each of these restrictions is to limit the number of subscribers to
8 Sunday Ticket in order to protect the viewership of the Sunday Afternoon telecasts
9 produced by Fox and CBS to local markets. The NFL Defendants benefit from these
10 restrictions because they allow the League to extract more in rights fees from their
11 broadcast partners. These restrictions harm class members by limiting the options in
12 the market for NFL telecasts and raising the price to access such games.

13    The NFL Defendants maintain that throughout the class period DirecTV had
14 unilateral discretion to set prices and determine package characteristics with no
15 limitation on subscriber numbers. Yet each one of above-cited restrictions has carried
16 over from the NFL-DirecTV agreement to the new arrangement with YouTube.
17 YouTube is selling Sunday Ticket for $349 per season, nearly $50 more than the
18 price charged by DirecTV. Like DirecTV, YouTube sells Sunday Ticket on an all-
19 or-nothing basis. The only package offered is the one that contains every out-of-
20 market game. The NFL-Google agreement contains provisions with the purpose and
21 effect of reducing the number of subscribers to Sunday Ticket: ███████████
22 ███████████
23 And YouTube, like its predecessor DirecTV, is the exclusive provider of Sunday
24 Ticket to residential consumers in the United States.

25    Plaintiffs contend that the NFL Defendants required Google to agree to each
26 of the above restrictions—high price, low subscriber numbers, no package options—
27 as a condition of securing the rights to Sunday Ticket, just as they did with DirecTV.
28 Yet few of these restrictions are expressly provided by the agreement. For example,

1  the NFL-Google agreement ████████████████████████████
2  ████████████████████████████████████████████████
3  ████████████████████████████████████████████████
4  ██████████████████████ Discovery about the negotiation process between Google
5  and the NFL on each of these subjects will tend to prove (or disprove) Plaintiffs'
6  contention that the NFL exerts more control over the Sunday Ticket product than the
7  contract indicates.

8      Evidence that the NFL imposed restrictions on Google will support Plaintiffs'
9  claims that the NFL imposed these same restraints on DirecTV during the class
10 period, to the detriment of consumers. This evidence is also relevant to injunctive
11 relief, which will directly impact the NFL-Google agreement. As the MDL Court
12 recognized in its class certification order, in which it referred specifically to the
13 YouTube contract, "the challenged conduct driving this antitrust case remains
14 ongoing…. An injunction would [] benefit the entire class because it would alleviate
15 the anticompetitive harm across the board for the football-viewing class members—
16 that is, an injunction would put an end to the alleged restraints on NFL football
17 telecasts that result in inflated market prices." Dkt. 894 at 21. Evidence that the
18 challenged restrictions continue into the present day is directly relevant to Plaintiffs'
19 claims for injunctive relief. And the requested discovery is tailored to capture that
20 evidence.

21     The evidence sought is proportional to the needs of the case for the same
22 reasons. Billions of dollars of damages are at stake in this litigation, as is the viability
23 of a contract worth billions of dollars to both the NFL Defendants and Google.
24 Discovery as to Google's negotiations with the NFL will be important in resolving a
25 key issue in that litigation—the degree of influence that the NFL over a Sunday
26 Ticket product that is ostensibly sold by a third-party. That issue bears directly on the
27 NFL Defendants' liability.
28

C. **The Benefits of Discovery Outweigh any Burden on Google**

The burden that Plaintiffs' request would impose on Google—one of the largest and wealthiest corporations in the United States if not the world—pales in comparison to the likely benefit of the discovery. The relief sought in this motion is well within the bounds of Rule 26. *See, e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) ("[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party … [and] such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." (cleaned up)).

Plaintiffs' request is modest in scope. Plaintiffs seek to conduct electronic searches of only six Google employees who had direct involvement in the negotiations with the NFL. Plaintiffs identified these individuals from their review of communications produced by the NFL. The documents requested from Google span a limited ▮▮▮▮▮▮▮▮▮▮ until December 21, 2022 when the Sunday Ticket agreement was executed. Within that span, Plaintiffs seek only Google's internal discussions about the various proposals and counterproposals exchanged with the NFL. Plaintiffs have thus tailored their requests to exclude any documents that are in the possession of the NFL Defendants.

Plaintiffs seek these documents from Google because, as the NFL Defendants represented to the MDL Court, many of the conversations between the League and third parties like Google were oral. *See* Dkt. 913-1 at 8 of 41 ("as evident from the produced documents, much of the negotiations were handled in person or telephonically, as would be expected in connection with a deal of this magnitude"). As a result, the NFL Defendants have produced few, if any, documents about the extra-contractual restrictions that they imposed on Google. Evidence of Google's

Error! Unknown document property name.

negotiations with the NFL on the requested issues are thus unavailable by other means. It is for that reason that Plaintiffs served the subpoena and bring this motion.

Moreover, the custodial searches requested in this motion are the only efficient method of collecting these documents. Despite their best efforts, neither Plaintiffs nor Google were able to formulate an alternative method during the meet-and-confer process. Because Plaintiffs have further narrowed their requests to a handful of discrete topics—retail pricing, subscriber numbers, package characteristics, and rights fees—the task of formulating search terms to capture responsive documents should not be onerous.

### D. There Are No Concerns about Commercial Sensitivity

Nor does Plaintiffs' request require Google to "disclos[e] a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i). The requested documents relate to past negotiations with the NFL over a deal that has already been enshrined into a multi-year agreement. Any concerns of commercial sensitivity diminished when those negotiations concluded. The rights to Sunday Ticket are no longer on the market. There is thus no reason to believe that disclosure of Google's discussions and analyses of proposed terms would cause the company competitive harm.

Even if such a concern did exist, it would be mitigated by the two protective orders operative in the litigation. The supplemental protective order creates a "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE DESIGNATION" that limits disclosure of "sensitive material implicated in the negotiation and execution of licensing agreements with the NFL" to outside counsel, experts, vendors, and court personnel. Dkt. 422 at 2. Importantly, that order prevents disclosure of such information to "any outside counsel in this litigation who has any responsibility for advising any person regarding the negotiation or execution of affiliation agreements or licensing agreements with the NFL." *Id.* at 3. In other words, no documents produced by Google will be disclosed to any NFL personnel or to any

NFL attorneys involved in transactional matters that affect Google's business interests.

Even if the requested documents did constitute "confidential … commercial information" within the meaning of Rule 45(d)(3)(B), Plaintiffs have a substantial need for the documents that cannot otherwise be met. As discussed above, whether and to what extent the NFL plays a role in setting the retail price of Sunday Ticket is a hotly disputed issue in this case, bearing directly on liability and the issue of antitrust standing. The discovery from Google is therefore "relevant and essential to a judicial determination of [Plaintiffs'] case" within the meaning of Rule 45, *Gonzales*, 234 F.R.D. at 685.

### E.  The Subpoena Is Timely

Lastly, any objections about the timeliness of Plaintiffs' subpoena are meritless. On August 11, 2022, the MDL Court granted Plaintiffs' motion to take additional discovery concerning the Sunday-Ticket negotiations after the August 5, 2022 close of fact discovery. Dkt. 607 at 4. In that motion, Plaintiffs specifically requested "to conduct discovery from the NFL Defendants and *the new third-party rightsholder* after an agreement is finally reached." Dkt. 546-2 (emphasis added). The MDL Court granted the motion without any limitation. In fact, the MDL Court specifically authorized "[d]ocument production related to NFL Defendants' ongoing negotiations with third parties for the sale of the future rights to NFL Sunday Ticket." Dkt. 607 at 4.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS MOTION TO THE CENTRAL DISTRICT OF CALIFORNIA

### A.  Legal Standard

"When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Further, courts consider "a number of factors relating to the underlying

litigation including the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Dr. Muhammad Mirza and Allied Med. and Diagnostic Servs., LLC, v. Yelp, Inc.*, 2021 WL 2939922, at *2–3 (N.D. Cal. July 13, 2021) (cleaned up). Transfer is appropriate when doing so would "avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion" and where "such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 428 (N.D. Cal. 2014) (quoting Fed. R. Civ. P. 45 advisory committee's note).

### B.  Exceptional Circumstances Justify Transfer

Pursuant to this standard, there are numerous reasons why the MDL Court is best positioned to adjudicate this motion in the context of the underlying litigation. This multi-district litigation was assigned to the Central District of California in 2015. Since that time, the MDL Court has developed deep familiarity with the issues in this case—ruling on a motion to dismiss and more recently certifying two classes based on a "a rigorous assessment of the available evidence." Dkt. 894 at 15.

Moreover, the MDL Court has already resolved issues that are material to the instant motion: the relevance of the new Sunday Ticket agreement to Plaintiffs' antitrust claims and the proper scope of that discovery. In the past 13 months, the Court has adjudicated three motions on that very subject. *See* Dkt. 607 (granting motion to take limited discovery after the fact-discovery deadline); Dkt. 645 (granting motion to compel production of documents by the NFL Defendants); Dkt. 938 (same). The MDL Court's familiarity with the specific issues involved warrants transfer. *See 3B Med., Inc. v. Resmed Corp.*, 2016 WL 6818953, at *3 (S.D. Cal. Oct. 11, 2016) ("Because the Middle District of Florida is in a better position to rule on these motions based on its familiarity with the issues involved, the Court finds exceptional circumstances exist and that transfer is permitted under Rule 45.").

Error! Unknown document property name.

The MDL Court likewise has more ready access to information necessary to resolve Google's objection that the information sought in the subpoena can be obtained from the NFL Defendants. *See In re All. Healthcare Partners, LLC*, 2022 WL 16527952, at *5 (D. Ariz. Oct. 28, 2022) (finding issuing court better situated to "confirm that the information sought from [the third party] is not duplicative"). Google's principal arguments related to burden, that the requested documents are obtainable from parties to the underlying litigation, involves information that is in the possession of the MDL Court, which has issued several orders compelling the NFL to produce discovery on the subject.

Finally, litigating this matter in the Central District of California imposes little burden on Google. Litigating in the Central District of California should not impose *any* burden on Google. Google is one of the world's largest companies. Its lead counsel on this matter is based in Washington, DC. Document production—which Google has already provided to Plaintiffs in limited fashion—is conducted electronically. And the Magistrate Judge in the MDL Court, to whom all discovery matters have been designated, generally holds remote hearings. *See* Dkt. 394, 599, 723. That fact further supports transfer. *See In re All. Healthcare Partners,* 2022 WL 16527952, at *6 (citing remote hearings as a factor favoring transfer). Google would still have the benefit of "the application of Ninth Circuit authority on the merits of its motion." *In re Welding Rod Prods. Liab. Litig.*, 406 F. Supp. 2d 1064, 1067-68 (N.D. Cal. 2005) (granting motion to transfer motion to quash subpoena to MDL court). In sum, there is no practical difference to litigating this matter in the Northern District of California as opposed to the Central District of California. And any such difference would be outweighed by the MDL Court's interest in resolving matters with which it has developed significant expertise, and which bear on the merits of a multi-district litigation that it has managed for more than eight years.

Error! Unknown document property name.

## V.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion, enter its proposed Order, and compel Google to provide the venue discovery without further delay. In the alternative, the Court should promptly transfer this Motion to the MDL Court in the Central District of California.

Dated: August 21, 2023                    Respectfully submitted,

                                          By:   */s/ Marc M. Seltzer*
                                                Marc M. Seltzer

                                                Marc M. Seltzer (54534)
                                                mseltzer@susmangodfrey.com
                                                SUSMAN GODFREY L.L.P.
                                                1900 Avenue of the Stars, Suite 1400
                                                Los Angeles, CA 90067
                                                Tel: (310) 789-3100
                                                Fax: (310) 789-3150

                                                Tyler Finn (*Pro Hac Vice pending*)
                                                tfinn@susmangodfrey.com
                                                SUSMAN GODFREY L.L.P
                                                1301 Avenue of the Americas, 32nd Fl.
                                                New York, NY 10019
                                                Tel: (212) 336-8330
                                                Fax: (212) 336-8340

                                                *Plaintiffs' Co-Lead Counsel*