EXHIBIT 1

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

| | | |
|---|---|---|
| Suite 5100 | Suite 1400 | Suite 3000 |
| 1000 Louisiana Street | 1900 Avenue of the Stars | 401 Union Street |
| Houston, Texas 77002-5096 | Los Angeles, California 90067-6029 | Seattle, Washington 98101-2683 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

Tyler Finn
Direct Dial (212) 336-8330

E-Mail TFinn@susmangodfrey.com

March 30, 2023

Google LLC
c/o CSCS-Lawyers
2710 Gateway Drive, Suite 150N
Sacramento, CA 95833

Re:   *In re National Football League's "Sunday Ticket" Antitrust Litigation*,
Case No. 2:15-ml-02668-PSG-JEMx (C.D. Cal.)

To whom it may concern:

Please find enclosed a subpoena directing Google, LLC to produce documents in the above-captioned case. Schedule A to the subpoena identifies the documents requested, definitions related to the document requests, and instructions for the manner of producing the requested documents. Schedule B is a copy of the protective orders entered in this case. And Schedule C is a copy of the Stipulated Order Regarding Discovery of Electronically Stored Information and Other Documents entered in this case.

Please do not hesitate to contact me should you wish to discuss or raise questions about this subpoena.

Sincerely,

Tyler Finn

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | )  | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:15-ML-02668-PSG (JEMx) |
| IN RE NATIONAL FOOTBALL LEAGUE'S SUNDAY TICKET ANTITRUST LITIGATION | ) ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        GOOGLE LLC c/o CSCS-Lawyers, 2710 Gateway Drive, Suite 150N, Sacramento, CA 95833

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attached Schedule(s)

| Place: Hausfeld LLP<br>        600 Montgomery Street- Suite 3200<br>        San Francisco, CA 94111 | Date and Time:<br><br>        05/01/2023 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        03/30/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | s/ Tyler Finn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Plaintiffs
Ninth Inning Inc.; 1465 Third Avenue Restaurant Corp., et al.        , who issues or requests this subpoena, are:

Tyler Finn, Susman Godfrey LLP, 1301 6th Avenue, New York, NY, 10019, tfinn@susmangodfrey.com, 212 729 2016

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:15-ML-02668-PSG (JEMx)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | Reset |

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## SCHEDULE A

## DEFINITIONS

The words and phrases used in these requests shall have the meaning ascribed to them under the Federal Rules of Civil Procedure and the Federal Rules of Evidence. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production of Documents.

1.      The terms "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of the requests documents which might otherwise be construed to be outside the scope so as to give the broadest possible meaning to a particular request in which either or both is used. The singular includes the plural number and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

2.      "Amazon" means Amazon.com, Inc., its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by Amazon, together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

3.      "Apple" means Apple Inc., its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by Apple, together with all present and former directors, officers,

employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

4.      "CBS" means CBS Broadcasting Inc., its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by CBS, together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

5.      "Club" means any football club or team that is a member of the National Football League.

6.      "Communication" means, without limitation, the imparting or exchange of information, thoughts, or opinions by any means including orally, in writing, by signs, signals, or code, including oral, written, or electronic communications, such as face-to-face meetings, electronic communications, emails, facsimiles, telephone communications, correspondence, or other exchange of written or recorded information. The phrase "communication between" is defined to include instances where one party addresses the other party, but the other party does not necessarily respond.

7.      "Concerning" means relating, pertaining to, referring to, describing, discussing, regarding, memorializing, reflecting, containing, evidencing, or constituting.

8.      "DirecTV" means DIRECTV, LLC, including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, any organization or entity that DirecTV manages or controls, including those merged with or acquired by DirecTV, together with all present and former

directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

9.      "Document" or "Documents" means any writing or other thing as described in Rule 34 of the Federal Rules of Civil Procedure and includes the original and all non-identical copies of all written, printed, recorded, or electronically stored information, including, but not limited to, letters, correspondence, memoranda, drafts, legal pleadings, calendars, diaries, day planners, journals, travel records, lists, outlines, summaries, notes, reports, compilations, notebooks, work papers, graphs, charts, spreadsheets, databases, blueprints, books, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, telephone records, voicemail, telegrams, facsimiles, photographs, videotapes, audiotapes, digital audio or video recordings, other film and sound reproductions, presentations, slideshows, emails, email attachments, text messages, instant messages, internal or external web sites, social networking data and messages, compact discs, computer files and disks, sales, advertising and promotional literature, agreements, stored recordings, minutes or other records of meetings, transcripts, all written or graphic records or representations of any kind, and all electronic data, records or representations of any kind, including all file folders, directories, and metadata.

10.      "ESPN" means ESPN Inc., its predecessors, wholly owned or controlled subsidiaries or affiliates, including its broadcast network, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by ESPN Inc., together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

11.     "Fox" means Fox Broadcasting Company, its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by Fox, together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

12.     "Goldman Sachs" means Goldman Sachs, including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, any organization or entity that Goldman Sachs manages or controls, including those merged with or acquired by Goldman Sachs, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

13.     "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way. "Including," therefore, means "including, but not limited to," or "including without limitation."

14.     "NBC" means National Broadcasting Company, its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by NBC, together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

15.     "NFL" or "League" means the National Football League, including its predecessors, wholly owned or controlled subsidiaries or affiliates (including but not limited to

NFL Enterprises LLC), successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, any organization or entity that the NFL manages or controls, including those merged with or acquired by the NFL, and the member Clubs of the NFL, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

16.     "NFL Sunday Ticket" means the subscription package of NFL games that allows residential and/or commercial subscribers to watch televised broadcasts of Sunday afternoon regular season NFL games.

17.     "Person" means, without limitation, any individual, corporation, partnership, or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

18.     "Relevant Period" means January 1, 2021 through the present.

19.     "Roku" means Roku, Inc., including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, any organization or entity that Roku manages or controls, including those merged with or acquired by Roku, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on their behalf.

20.     "Television," "televised" or "telecasts" includes any form or means of making broadcasts available to be viewed via television or other video platforms, including sponsored broadcasts, through cable, satellite, or a multichannel video programming distributor, and through online platforms, and includes over-the-air broadcasts and streaming over the internet.

21.     "You," "Your" or "Your Company," unless otherwise noted, means Google Inc., its predecessors, wholly-owned or controlled subsidiaries or affiliates (including but not limited to YouTube), successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates, and any organization or entity that it manages or controls, including those merged with or acquired by Google, Inc., together with all present and former directors, officers, employees, agents, attorneys, representative, or any persons acting or purporting to act on its behalf.

## INSTRUCTIONS

1.     In the event You are able to produce only some of the Documents called for in a particular request, please produce all the Documents You are able to and state the reasons for Your inability to produce the remainder.

2.     If You object to a portion of a request, produce all Documents called for by that portion of the request to which You do not object.

3.     These requests call for the production of responsive Documents within Your possession, custody, or control, including without limitation any Document available to You upon request from Your parents, affiliates, subsidiaries, employees, directors, officers, or agents.

4.     Responsive Documents should be produced electronically or in paper format as they are kept in the usual course of business. Alternatively, You may produce responsive Documents organized and labeled to correspond to the enumerated requests below.

5.     Electronically stored Documents or information should be produced in such a manner as to maintain the integrity of any metadata associated with those Documents or information.

6.     If any part of a Document is responsive to any request herein, produce the entire document, including any attachments or exhibits.

7.      If You object to only a part of a request in Your response to that request, identify with particularity any Document and the portion of the request to which You object and set forth clearly the extent of and the specific ground for the objection.

8.      Each request shall be construed independently, and no request shall be viewed as limiting the scope of any other request.

9.      Two protective orders have been entered in this case that cover the production of documents by third parties. Copies of the protective orders are attached as Schedule B.

10.      All electronically stored information should be produced in accordance with the Stipulated Order Regarding Discovery of Electronically Stored Information and Other Documents ("ESI Order").  A copy of the ESI Order is attached as Schedule C.

11.      Unless otherwise stated, these requests cover the Relevant Period.  All Communications and Documents which refer or relate to this period, whether prepared or collected before, during or afterward, are to be produced.

## DOCUMENTS TO BE PRODUCED

1.      All Documents constituting, memorializing, or reflecting any Communications between or among You and any person affiliated with the NFL or any Club concerning NFL Sunday Ticket.

2.      All Documents constituting, memorializing, or reflecting any Communications between or among You and any person affiliated with Amazon, Apple, CBS, Fox, Goldman Sachs, ESPN, NBC, or Roku concerning NFL Sunday Ticket or the rights to distribute NFL telecasts.

3.      All Documents constituting, memorializing, or reflecting the actual or proposed terms of the December 21, 2022 Agreement between You and the NFL concerning NFL Sunday Ticket.

4.      All Documents reflecting or concerning any initiatives, discussions, or proposals to create a direct-to-consumer sports offering involving the NFL, including but not limited to the initiative referred to as "Project Hoya."

5.      All Documents reflecting or concerning the actual or proposed package characteristics of NFL Sunday Ticket.

6.      All Documents reflecting or concerning the actual, estimated, or projected number of commercial or residential subscribers to NFL Sunday Ticket.

7.      All Documents reflecting or concerning the retail price of NFL Sunday Ticket for commercial or residential subscribers.

8.      All Documents reflecting or concerning agreements between the NFL and any other broadcaster of NFL football games (including but not limited to CBS and Fox).

9.      All Documents constituting, reflecting, or concerning reports and studies prepared by or for You, or received by You, regarding the following subject matters:

      a.  NFL Sunday Ticket, and the proposed creation of any similar package for televising and/or streaming out-of-market NFL games;

      b.  The estimated or actual economic value of NFL Sunday Ticket;

      c.  The estimated or actual economic value of being an exclusive or non-exclusive distributor for any or all out-of-market NFL football games.

10.     All documents constituting or reflecting any communications, reports, or analyses concerning compliance with the antitrust or competition laws of any State, the United States, and any foreign country, concerning arrangements for telecasting NFL football games, including any analysis of whether the exclusivity terms of NFL Sunday Ticket may violate the Sherman Act, and

any requests for indemnification that encompass or relate to claims brought under the antitrust or competition laws.

      11.    All Documents reflecting or concerning the litigation captioned *In re: NFL Sunday Ticket Antitrust Litigation*, 15-ml-02668-PSG (JEMx).

# SCHEDULE B

Beth A. Wilkinson (admitted *pro hac vice*)
**WILKINSON WALSH + ESKOVITZ LLP**
1900 M Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com

Sean Eskovitz (State Bar No. 241877)
**WILKINSON WALSH + ESKOVITZ LLP**
11726 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com

*Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRIST LITIGATION | Case No. 2:15-ml-02668-BRO (JEMx) |
| _____ | STIPULATED PROTECTIVE ORDER |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge: Hon. Beverly Reid O'Connell |
| Case No. 2:15-cv-09944-BRO-JEM | |
| _____ | |

The parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order ("Order"):

## 1. INTRODUCTION

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge that this Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5.1 sets forth the procedure that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal.

## 2. DEFINITIONS

Capitalized terms not otherwise defined in this Order shall have the following meanings:

2.1 "Action" means all cases consolidated for pre-trial purposes in *In re: National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-BRO (JEMx), including all cases subsequently transferred to or from Case No. 2:15-ml-02668-BRO (JEMx).

2.2 "Acknowledgment and Agreement to Be Bound" means an acknowledgement and agreement identical in substance to the document attached hereto as Exhibit A.

2.3 "Challenging Party" means a Party or Non-Party that challenges the designation of information or items under this Order.

**STIPULATED PROTECTIVE ORDER**

2.4 "CONFIDENTIAL Information or Items" means information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.5 "Counsel" means Outside Counsel and In-House Counsel.

2.6 "Designating Party" means a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.7 "Disclosure or Discovery Material" means all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8 "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action, as well as such Expert's support staff.

2.9 "Final Disposition" means the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice or (2) final judgment in this Action after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

2.10 "HIGHLY CONFIDENTIAL Information or Items" means information that qualifies as "CONFIDENTIAL" Information or Items and includes information or items that contain competitively sensitive confidential information of the Designating Party, the disclosure of which may result in competitive harm, including, but not limited to, (i) any documents or information relating to or reflective of market strategies,

**STIPULATED PROTECTIVE ORDER**

including business planning, contract negotiations and terms, and research and development activities; (ii) any documents or information relating to or reflective of pricing, including underlying cost data, budgets, and any price-related terms of a party; and (iii) any documents or information relating to or reflective of customer information.

2.11   "In-House Counsel" means attorneys and their support staff who are employees of a Party to this Action.

2.12   "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.13   "Outside Counsel" means attorneys and their support staff who are not employees of a Party and who are retained to represent or advise a Party in this Action and/or have appeared in this Action and/or are affiliated with a law firm that has been retained to represent that Party or has appeared on behalf of that Party in this Action.

2.14   "Party" means any party named in this Action, including all of its officers, directors, owners, employees, consultants, Experts, and Outside Counsel.

2.15   "Producing Party" means a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.16   "Professional Vendors" means persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; jury consulting; and organizing, storing, or retrieving data in any form or medium); their employees and subcontractors; and, in the case of jury consultants, any participants in any mock trial or jury research.

2.17   "Protected Information" means any "CONFIDENTIAL Information or Items" or "HIGHLY CONFIDENTIAL Information or Items," as defined herein.

**STIPULATED PROTECTIVE ORDER**

2.18 "<u>Receiving Party</u>" means a Party that receives Disclosure or Discovery Material from a Producing Party.

2.19 "<u>Shared Information or Items</u>" means any Protected Information that, based on the content of the information, was shared between or among the National Football League, NFL Enterprises LLC, or the Individual NFL Clubs (together, the "NFL Defendants"), on the one hand, and DIRECTV, LLC or DIRECTV Holdings LLC (collectively, the "DIRECTV Defendants"), on the other hand.

**3.    SCOPE**

The protections conferred by this Order cover (1) Protected Information; (2) any information copied, derived, or extracted from Protected Information; (3) all copies, excerpts, summaries, or compilations of Protected Information; and (4) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Information.

This Order does not govern the use of Protected Information at trial. Any use of Protected Information at trial shall be governed by the orders of the trial judge.

**4.    DURATION**

The confidentiality obligations imposed by this Order shall remain in effect, even after Final Disposition, until a Designating Party agrees otherwise in writing or a court order otherwise directs.

**5.    DESIGNATING PROTECTED INFORMATION**

5.1    <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)    for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial

4

proceedings), that the Producing Party affix, at a minimum, the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", as appropriate, to each document that contains Protected Information.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix either the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", as appropriate, to each document that contains Protected Information.

(b)     with respect to transcribed testimony, that the Producing Party give notice to opposing counsel designating such portions (and exhibits thereto) as CONFIDENTIAL or HIGHLY CONFIDENTIAL, as appropriate, no later than forty-five (45) calendar days after receipt of the final transcript of the deposition, or by orally designating such testimony as CONFIDENTIAL or HIGHLY CONFIDENTIAL on the record at the deposition or other proceeding at which it is given. Until the forty-five (45) calendar day period expires, all deposition transcripts shall be treated as HIGHLY CONFIDENTIAL Information unless otherwise agreed. After the expiration of the 45-day period, the transcript shall be treated only as actually designated.

(c)     if the Designating Party believes that a deposition question calls for HIGHLY CONFIDENTIAL Information of the Designating Party, counsel for that Party may, before the witness answers, so state, and any persons in attendance who are not authorized under this Order to have access to such HIGHLY CONFIDENTIAL Information must then absent themselves for the duration of the

**STIPULATED PROTECTIVE ORDER**

testimony containing HIGHLY CONFIDENTIAL Information. A Party's failure to so advance designate at a deposition shall not constitute a waiver of that Party's right to later designate such testimony as Protected Information pursuant to this Order.

5.2     Inadvertent Failures to Designate. An inadvertent failure to designate Protected Information or Items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material as Protected Information. Upon any such inadvertent failure to properly designate any Protected Information, reasonable arrangement will be made for the return to the Producing Party of all copies of the incorrectly designated documents(s) and for the substitution, where appropriate, of properly labeled copies of such documents. The Receiving Party or Parties shall make all reasonable efforts to destroy all previously produced copies of such documents that were incorrectly designated upon receipt of replacement copies of such documents with the proper designation. The Receiving Party shall verify in writing that it has destroyed said incorrectly designated documents or notify the Designating Party in writing when such documents cannot be reasonably destroyed.

5.3     Exercise of Restraint and Care in Designating Material for Production. Each Party or Non-Party that designates information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent practicable, only those parts of documents, items, or oral or written communications that require protection shall be designated. Mass, indiscriminate, or routinized designations are prohibited. If a Designating Party learns that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all parties that it is withdrawing the mistaken designation.

## 6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2    <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process under Local Rules 37-1 through 37-4.

6.3    Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court rules on the challenge.

## 7.    ACCESS TO AND USE OF PROTECTED INFORMATION

7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Information that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Information may be disclosed only to the categories of persons and under the conditions described in this Order.

7.2    <u>Disclosure of CONFIDENTIAL Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel;

(b)    the owners, officers, directors, and employees (including In-House Counsel) of the Receiving Party who are actively engaged in assisting counsel with the prosecution or defense of the Action and to whom disclosure is reasonably necessary for this Action and who have executed the Acknowledgment and Agreement to Be Bound;

(c)     testifying or consulting Experts of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have executed the Acknowledgment and Agreement to Be Bound;

(d)     Professional Vendors to whom disclosure is reasonably necessary for this Action and who have executed the Acknowledgment and Agreement to Be Bound;

(e)     the Court and its personnel;

(f)     court reporters and their staff;

(g)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h)     witnesses who testify at deposition or at trial, provided that such witnesses (i) possess prior knowledge of such CONFIDENTIAL Information or Items and execute a copy of Acknowledgement and Agreement to be Bound or affirm under oath to abide by this Protective Order before being shown or given any Confidential Information or Items or (ii) are directors, officers, or employees of the Designating Party or an owner or parent of the Designating Party. The witness shall be informed that this Order restricts the disclosure of the information, that he or she may consider and/or use the CONFIDENTIAL Information or Items only for purposes of preparing to testify or testifying in this Action and not for any other purpose, and that he or she is subject to the Court's jurisdiction for purposes of enforcing this Stipulated Protective Order. No individual who is shown CONFIDENTIAL Information or Items pursuant to this subsection shall be permitted to retain or keep copies of the CONFIDENTIAL Information or Items or to view it outside the presence of counsel, unless permitted by some other provision of this Stipulated Protective Order to do so. To the extent possible, pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information shall be separately bound by the court reporter. Testimony that reveals Protected Information may not be disclosed to anyone except as permitted under

this Stipulated Protective Order. Further, if all or part of a videotaped deposition contains Protected Information, the DVD (or videotape) container shall be so labeled; and

(i)     any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.3     <u>Disclosure of HIGHLY CONFIDENTIAL Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL" only to persons described above in subsections 7.2(a), (c), (d), (e), (f), and (g), under the terms and conditions therein specified.

In addition, a Party may disclose information or items designated "HIGHLY CONFIDENTIAL" (1) to a witness or potential witness who is a director, officer, or employee of the Designating Party or an owner or parent of the Designating Party; or (2) to other witnesses and potential witnesses, but only to the extent that counsel for the examining or preparing party reasonably believes in good faith that such witness or potential witness authored or previously received or reviewed such information or material in the course of business. To the extent the information or material purports to describe the conduct or statements of the person, he or she may be shown the particular portion of the information or material purporting to describe his or her conduct or statements, but only that portion and not the remainder of the information or material. A Party intending to disclose HIGHLY CONFIDENTIAL Information or Items to such a witness or potential witness who is not employed by the Designating Party or by an owner or parent of the Designating Party must provide written notice to the Designating Party identifying (by Bates number or other individually identifiable information) the HIGHLY CONFIDENTIAL Information or Items intended to be disclosed. Should the disclosing and Designating parties, after meeting and conferring, disagree as to whether the disclosure is reasonably necessary, the HIGHLY CONFIDENTIAL

9
**STIPULATED PROTECTIVE ORDER**

Information or Items shall not be disclosed to the witness unless and until the Court orders such disclosure.

Notwithstanding the foregoing, any Shared Information or Items marked as "HIGHLY CONFIDENTIAL" shall be treated as CONFIDENTIAL only by the NFL Defendants and DIRECTV Defendants.

**8.    PROTECTED INFORMATION SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," then that Party must:

(a)    promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Stipulated Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)    cooperate with respect to all reasonable procedures pursued by the Designating Party whose Protected Information may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission; *provided, however*, that nothing in this Section authorizes or encourages a Receiving Party to disobey a lawful directive from another court. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material.

**9.    PROTECTED MATERIAL PRODUCED IN THE ACTION BY A NON-PARTY**

(a)     The terms of this Order are applicable to Protected Information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"; *provided, however*, that nothing in these provisions prohibits a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request in this Action, to produce a Non-Party's information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's information, then the Party shall:

(1)     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)     make the information requested available for inspection by the Non-Party, if requested by the Non-Party.

(c)     If the Non-Party fails to seek a protective order from this Court within 21 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's information responsive to the discovery request, so long as such production would not violate the Receiving Party's legal obligations to the Non-Party. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court; *provided, however,* that nothing in this Section authorizes or encourages a Receiving Party to disobey a lawful directive from another court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Information.

**10.     UNAUTHORIZED DISCLOSURE OF PROTECTED INFORMATION**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Information to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request that such person or persons execute the Acknowledgment and Agreement to Be Bound.

## 11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED INFORMATION

A Party may obtain the return of any information it claims to be subject to a privilege or protection, including, without limitation, the attorney-client privilege and the work-product protection, by notifying the recipient(s) in writing and requesting its return, sequestration, or destruction. If such a claim of privilege or protection first becomes apparent during the conduct of a deposition, the Party claiming the privilege or protection may assert the claim on the record during the deposition and then promptly provide written notification, as described in the preceding sentence, following the conclusion of the deposition. Within 10 business days, the recipient(s) shall gather and return all copies of the privileged or protected materials to the Producing Party, or alternatively, destroy the privileged or protected materials and certify as such to the Producing Party. After a document is returned, sequestered, or destroyed pursuant to this paragraph, a party may move the Court for an order compelling production of the document, but such party may not assert as a ground for entering such an order the mere fact of inadvertent production. If a Party requests the return, pursuant to this paragraph, of any information that it claims to be subject to a privilege or protection then in the custody of one or more other Parties, the possessing Parties shall not make further use of the information until such time as the Court has ruled on a motion respecting

the claimed privilege or protection. Pursuant to ABA Model Rule 4.4, any lawyer to a Party who receives any information that the lawyer knows or reasonably should know was inadvertently sent by a Producing Party shall promptly notify the sender.

**12.   MISCELLANEOUS**

12.1   <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2   <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Protective Order.

12.3   <u>Other Considerations</u>. Nothing in this Order shall (a) be deemed to limit or restrict in any manner a Party's right to use, or to authorize or consent to the use of, its own Protected Information; (b) be deemed to limit or restrict in any manner a Party's rights, if any, to use any documents, materials, or information obtained independent of discovery in the Action, whether or not such documents, materials, or information are also obtained through discovery in the Action; (c) preclude the Parties to this Order from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular Protected Information; (d) preclude any Party from filing a motion seeking greater, more limited, or different protection from the Court under Rule 26(c) of the Federal Rules of Civil Procedure; or (e) preclude any Party from filing a motion with respect to the manner in which Protected Information shall be treated at trial.

12.4   <u>No Restricted Advice</u>. Except as provided in Section 11 above, nothing in this Order shall prevent or otherwise restrict counsel from rendering advice to their clients in this litigation and, in the course thereof, relying on

examination of Protected Information; *provided, however*, that in rendering such advice and otherwise communicating with such client, counsel shall not make specific disclosure of any information in any manner that is inconsistent with the restrictions or procedures set forth herein.

12.5 <u>Filing Under Seal</u>. Without written permission from the Designating Party or a Court order, a party may not file in the public record in this action any Protected Information. A party seeking to file under seal any Protected Information must comply with Local Rule 79-5.1. Filings may be made under seal only pursuant to a Court order authorizing the sealing of the specific material at issue. The fact that a document has been designated under this Order is insufficient to justify filing under seal. Instead, parties must explain the basis for confidentiality of each document sought to be filed under seal. Because a party other than the Designating Party may often seek to file Protected Information, cooperation between the parties in preparing, and in reducing the number and extent of, requests for under seal filing is essential. If a Receiving Party's request to file Protected Information under seal pursuant to Local Rule 79-5.1 is denied by the Court, then, unless otherwise instructed by the Court, the Receiving Party may file the material in the public record only after (1) the Designating Party has had the opportunity to seek reconsideration within four days of the denial, and (2) the Designating Party has had the opportunity to request to certify any denial of reconsideration for direct interlocutory appeal within 14 days of the denial of reconsideration, and any such request to certify has been denied.

## 13. FINAL DISPOSITION

After the Final Disposition of this Action, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Information to the Producing Party or destroy such material. As used in this Section, "all Protected Information" includes all copies, abstracts, compilations, summaries, reports, and any other format reproducing or capturing any of the

Protected Information. Whether the Protected Information is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that confirms compliance with this Section 13. Notwithstanding this provision, the Party's Outside Counsel shall be allowed to keep a complete set of all pleadings, court filings, correspondence, and the attorney's work product even if those documents include Protected Information or reference to Protected Information ("Attorney's File"), unless a Party objects within thirty (30) days of the termination of the litigation to the Outside Counsel's retention of any portion of the Attorney's File. The Parties shall agree to confer regarding any such objection and, in the event that it is not resolved by consent, shall bring it to the attention of the Court for resolution. In any event, such Attorney's File shall continue to be subject to the restrictions of this Order.

Notwithstanding anything to the contrary asserted herein, the obligations and requirements of this Section 13 shall apply to any Receiving Party who is dismissed from the Action, at any time during the proceedings, with immediate effect upon such dismissal.

## 14. CONSEQUENCES OF VIOLATION

Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

1    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

2    DATED: September 30, 2016

3    *s/ Marc M. Seltzer*

4    Marc M. Seltzer
     **SUSMAN GODFREY L.L.P.**
5    1901 Avenue of the Stars, Suite 950
     Los Angeles, CA 90067-6029
6    Telephone: (310) 789-3100
     Fax: (310) 789-3150
7    mseltzer@susmangodfrey.com

8

9    Howard I. Langer
     **LANGER, GROGAN & DIVER, P.C.**
10   1717 Arch Street, Suite 4130
     Philadelphia, PA 19103
11   Telephone: (215) 320-5660
     Fax: (215) 320-5703
12   hlanger@langergrogan.com

13

14   Scott Martin
     **HAUSFELD LLP**
15   33 Whitehall Street
     14th Floor
16   New York, NY 10004
     Telephone: (646) 357-1100
17   Fax: (212) 202-4322
     smartin@hausfeld.com
18

19   *Co-Lead Plaintiffs' Counsel*

20

21

22

23

24

25

26

27

28

---
16
**STIPULATED PROTECTIVE ORDER**

DATED: September 30, 2016

*s/ Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
**WILKINSON WALSH + ESKOVITZ LLP**
1900 M Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com

Sean Eskovitz (Bar No. 241877)
**WILKINSON WALSH + ESKOVITZ LLP**
11726 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

Neema T. Sahni (Bar No. 274240)
**COVINGTON & BURLING LLP**
1999 Avenue of the Starts, Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4782
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

**STIPULATED PROTECTIVE ORDER**

DATED: September 30, 2016

     *s/ Tammy A. Tsoumas*
     Michael E. Baumann (Bar No. 145830)
     Melissa D. Ingalls (Bar No. 174861)
     Robyn E. Bladow (Bar No. 205189)
     Tammy A. Tsoumas (Bar No. 250487)
     **KIRKLAND & ELLIS LLP**
     333 South Hope Street
     Los Angeles, CA 90071
     Telephone: (213) 680-8400
     Facsimile: (213) 680-8500
     michael.baumann@kirkland.com
     melissa.ingalls@kirkland.com
     robyn.bladow@kirkland.com
     tammy.tsoumas@kirkland.com

     *Counsel for Defendants DIRECTV, LLC and DIRECTV Holdings LLC*

**STIPULATED PROTECTIVE ORDER**

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

DATED: October 4, 2016

Hon. John E. McDermott
United States Magistrate Judge

STIPULATED PROTECTIVE ORDER

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I _____ [print or type full name] of _____ [print or type full address] declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on _____ [date] in the case of *In re: National Football League's "Sunday Ticket" Antitrust Litigation*, Case No. 2:15-ml-02668-BRO (JEMx). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order only, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
3   Los Angeles, CA 90067-6029
    Phone: (310) 789-3100/Fax: (310) 789-3150
4
    SCOTT MARTIN
5   smartin@hausfeld.com
    IRVING SCHER
6   ischer@hausfeld.com
    HAUSFELD LLP
7   33 Whitehall Street, 14th Floor
    New York, NY 10004
8   Tel: (646) 357-1100/ Fax: (212) 202-4322
9   HOWARD LANGER
    hlanger@langergrogan.com
10  EDWARD DIVER
    ndiver@langergrogan.com
11  PETER LECKMAN
    pleckman@langergrogan.com
12  LANGER GROGAN AND DIVER PC
    1717 Arch Street, Suite 4130
13  Philadelphia, PA 19103
    Tel: (215) 320-5660/ Fax: (215) 320-5703
14
    [Additional Counsel listed in Signature Page]
15
    Plaintiffs' Interim Co-Lead Class Counsel
16

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19

20
    IN RE: NATIONAL FOOTBALL            CASE NO.: 2:15-ml-02668−PSG
21  LEAGUE'S "SUNDAY TICKET"            (JEMx)
    ANTITRUST LITIGATION
22                                      Judge: Hon. Philip S. Gutierrez
23
    THIS DOCUMENT RELATES TO ALL        **AMENDED STIPULATED**
24  ACTIONS                             **SUPPLEMENTAL PROTECTIVE**
                                        **ORDER**
25

26

27

28

The parties hereby stipulate to and petition the Court to enter the following Stipulated Supplemental Protective Order (the "Non-Party Order"). The parties agree that the Non-Party Order is in supplement to the Stipulated Protective Order (the "Protective Order") entered by the Court on October 4, 2016 (Dkt. 197), and should not be interpreted to in any way alter the provisions set forth in the Protective Order except as expressly set forth herein.

1.     This Protective Order shall be applicable to and govern all depositions taken and all documents produced in response to subpoena, and all other discovery taken pursuant to the Federal Rules of Civil Procedure, and other information hereafter furnished, directly or indirectly, by or on behalf of any non-party in connection with this action which a non-party designates as "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE." The designation "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE" shall only apply to carriage rate information, sensitive material implicated in the negotiation and execution of affiliation agreements, and sensitive material implicated in the negotiation and execution of licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party who received a subpoena in this Action prior to December 31, 2021.    The terms "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" will continue to have the same meanings as that which is given to them in the Protective Order.

2.     All provisions governing "Protected Information" in the Protective Order shall apply to any document designated as "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE" by a non-party, except as otherwise modified by this Non-Party Order.

3.     Unless otherwise ordered by the Court or permitted in writing by the designating non-party, the parties may disclose any information or item designated "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE" by a non-party only to persons described in Paragraph 7.3 of the Protective Order with the following additional limitations:

a.      Regarding outside counsel described in Paragraph 7.2(a) of the Protective Order, the parties may not disclose any information or items designated "HIGHLY CONFIDENTIAL/COMMERCIALLY SENSITIVE" by a non-party to any outside counsel in this litigation who has any responsibility for advising any person regarding the negotiation or execution of affiliation agreements or licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party who received a subpoena in this Action prior to December 31, 2021, or to such outside counsel's staff and supporting personnel of such attorneys, such as paralegals, secretaries, stenographic and clerical employees and contractors, who are working on this litigation under the direction of such attorneys.

b.      Regarding testifying or consulting experts of the Receiving Party described in Paragraph 7.2(c) of the Protective Order, the parties may not disclose any information or items designated "HIGHLY CONFIDENTIAL/ COMMERCIALLY SENSITIVE" by a non-party to any outside consultant or retained expert who has any responsibility for negotiating or advising any person with respect to the negotiation of affiliation agreements or licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party who received a subpoena in this Action prior to December 31, 2021.  Any outside consultant or expert who receives any information or items designated as "HIGHLY CONFIDENTIAL/ COMMERCIALLY SENSITIVE" will not negotiate or advise any person with respect to the negotiation of affiliation agreements or licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party who received a subpoena in this Action prior to December 31, 2021 for a period of two years following the initial conclusion of this action in the district court.  This paragraph in no way limits or precludes any outside consultant or retained expert from providing services during, or in anticipation of, litigation, arbitration, or any other forms of dispute resolution relating to affiliation agreements or licensing agreements with the NFL, the NCAA, any NCAA athletic conference, or any Non-Party who received a subpoena in this Action prior to

3

December 31, 2021. Before disclosing any of the material, documents, or information covered by this Order to any such outside consultant or expert, counsel for the party retaining that outside consultant or expert shall ensure each outside consultant or expert so retained or employed is willing to commit to the obligations set forth herein, and obtain confirmation of such from each outside consultant or expert in writing.

        c.    For each person set forth in Paragraphs 7.2 and 7.3 of the Protective Order who must execute the Protective Order's Acknowledgment and Agreement to Be Bound, counsel for a Receiving Party shall further provide a copy of this Non-Party Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: February 10, 2022

*s/ Marc M. Seltzer*
MARC M. SELTZER
SUSMAN GODFREY L.L.P.

SCOTT MARTIN
IRVING SCHER
HAUSFELD LLP

HOWARD LANGER
EDWARD DIVER
PETER LECKMAN
LANGER GROGAN AND DIVER PC

ARUN SUBRAMANIAN
asubramanian@susmangodfrey.com
WILLIAM CHRISTOPHER CARMODY
bcarmody@susmangodfrey.com
SETH ARD
sard@susmangodfrey.com
TYLER FINN
tfinn@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd FL.
New York, NY 10019
Tel: (212) 336-8330/ Fax: (212) 336-8340

IAN M. GORE
igore@susmangodfrey.com
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 505-3841/Fax: (206) 516-3883

MICHAEL D. HAUSFELD
mhausfeld@hausfeld.com
HAUSFELD LLP
1700 K. Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201

MICHAEL P. LEHMANN
mlehmann@hausfeld.com
BONNY E. SWEENY
bsweeney@hausfeld.com
CHRISTOPHER L. LEBSOCK
clebsock@hausfled.com
HAUSFELD LLP
600 Montgomery St., Suite 3200
*Attorneys for Plaintiffs' Interim Co-Lead Class Counsel*

DATED: February 10, 2022

*s/ Jeremy S. Barber*
Beth A. Wilkinson
bwilkinson@wilkinsonstekloff.com
Rakesh Kilaru
rkilaru@wilkinsonstekloff.com
Brian L. Stekloff
bstekloff@wilkinsonstekloff.com
Jeremy S. Barber
jbarber@wilkinsonstekloff.com
WILKINSON STEKLOFF LLP
2001 M Street NW, Suite 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Gregg H. Levy
glevy@cov.com
Derek Ludwin
dludwin@cov.com
John Playforth
jplayforth@cov.com
COVINGTON & BURLING LLP
850 Tenth Street NW One City Center
Washington, DC 20001-4956
Telephone: (202) 622-5292
Facsimile: (202) 662-6804

Neema Trivedi Sahni
nsahni@cov.com
COVINGTON & BURLING LLP
2029 Century Park East Suite 3100
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4782

*Counsel for Defendants National Football League, Inc. and NFL Enterprises LLC and the Individual NFL Clubs*

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

DATED: 2/11/2022

John E. McDermott
United States Magistrate Judge

# SCHEDULE C

Beth A. Wilkinson (admitted *pro hac vice*)
**WILKINSON WALSH + ESKOVITZ LLP**
1900 M Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com

Sean Eskovitz (Bar No. 241877)
**WILKINSON WALSH + ESKOVITZ LLP**
11726 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

*Counsel for Defendants National Football
League, NFL Enterprises LLC, and the
Individual NFL Clubs*

[Additional Counsel Listed on Signature
Pages]

Marc M. Seltzer (54534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com

*Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE "SUNDAY TICKET" ANTITRUST LITIGATION _____ THIS DOCUMENT RELATES TO ALL ACTIONS _____ | Case No. 2:15-ml-02668-BRO (JEMx) **STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS** Judge: Hon. Beverly Reid O'Connell |

WHEREAS, Defendants in the above-captioned matter (the "Actions"), by and through their counsel, have met and conferred with Plaintiffs in all Actions, by and through Plaintiffs' co-lead counsel, as such counsel has been designated by this Court in its May 23, 2016 Order (Doc. 143), on a process governing the discovery of Electronically Stored Information ("ESI");

WHEREAS the parties have agreed upon a protocol for ESI discovery in the Actions, and seek to alert the Court of the terms their agreement and to obtain the Court's approval to proceed thereunder for the purposes of ESI discovery in all Actions;

NOW, THEREFORE, the parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding Discovery of Electronically Stored Information and Other Documents ("ESI Order"):

## 1. **PURPOSE**

This ESI Order represents the parties' agreement on technical and other specifications that will apply to ESI discovery in this case.  This ESI Order shall govern all ESI discovery in the Actions, as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.  To the extent that this ESI Order imposes limitations on discovery otherwise available under the Federal Rules of Civil Procedure, the parties have agreed to such limitations.  The fact that the parties have agreed to this ESI Order shall not be deemed an acknowledgement that any information excluded from discovery by this ESI Order would or would not be discoverable in the absence of this ESI Order.

## 2. **LIAISON**

The parties have identified outside counsel liaisons (each a "Designated ESI Liaison") to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each Designated ESI Liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-

discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

The parties will rely on the Designated ESI Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention wherever possible. The parties may freely change their Designated ESI Liaisons by providing notice to the other parties without further approval of the Court. The parties identify the following individuals as their Designated ESI Liaisons:

- Plaintiffs: Ian M. Gore, Susman Godfrey L.L.P.
- NFL Defendants (including the NFL teams): John Playforth, Covington & Burling LLP
- DirecTV Defendants: Ashley Neglia, Kirkland & Ellis LLP

## 3. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and production and to ensure proper ESI is preserved, the parties agree that:

a) Databases that cannot be produced in a production format set forth in Section 7 below or are otherwise not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and existing ESI from these sources, will be preserved (unless otherwise excluded from preservation by this Section 3) but will not be searched, reviewed, or produced except in accordance with this Order. A party with such a database that may have potentially responsive information shall notify the requesting party in writing of the existence of the database, the name of the database, and a description of the information stored within that database. The requesting party may then seek production of ESI from any such database subject to an agreement of the parties or other resolution as to the burden of accessing, searching, reviewing or producing ESI from such database.

3

b) In addition to the databases described in Section 3(a), above, the parties agree not to preserve, search, review, or produce the following, provided that if a document produced in discovery, a party's discovery response, or deposition testimony refers to discoverable information stored on one of the following formats, a party may seek access to such information (if otherwise preserved) only upon a showing of exceptional need and upon an agreement or other resolution as to the burden of producing such information:

- Backup media, backup tapes, or other long-term storage media, including cloud-based storage media, that were created strictly for use as a data back-up or disaster recovery medium;
- Voicemail, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats;
- For persons who are custodians as a result of their current or past employment, instant messaging communications and text messaging communications, including Skype communications;
- Automatically saved versions of documents and temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;
- Deleted, slack, fragmented, or other data only accessible by forensics;
- On-line access data such as temporary Internet files, history, cache, cookies, and the like;
- Email or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such email is routinely saved elsewhere;
- Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;
- Logs of communications made from mobile devices; and

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND OTHER DOCUMENTS

- For persons who are custodians as a result of their current or past employment, any data that exists on personal, non-company-owned electronic storage devices, including but not limited to smartphones, personal computers, PDAs, cellular telephones, digital cameras, personal cloud-based accounts, or web-based personal email accounts, provided that such storage devices are or were not used as a primary means of conducting business with respect to that employment.

## 4.   **DE-DUPLICATION**

A party may produce a single copy of a responsive document and a party may de-duplicate responsive ESI across custodians using MD5 or SHA1 Hash, or a similar method.  A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, if and only if all previous emails in the thread are contained within the final message.  In addition, only a single copy of an email need be produced even where it was sent to multiple recipients.  However, such de-duplication of email threads shall not apply to new email threads that branch off from an original email thread (*e.g.* the original thread is forwarded to a new group of recipients, or new content is introduced in the midst of an already-existing email thread).  To the extent any de-duplication is applied to a document other than email, (1) such de-duplication efforts may only be applied to documents that are identical in content and may not be applied to withhold production of non-identical versions of such documents (*e.g.*, earlier or later versions of documents, drafts of documents, etc.), and (2) all custodians with that document shall be identified in the metadata provided with that document in a "Duplicate Custodian" field.

For hardcopy documents, if a document that was originally generated by a software application (*e.g.*, Microsoft Word or Microsoft Outlook) is collected from a custodian in hard copy form, the producing party has no obligation to locate and

produce the electronic file from which the hard copy was created.  However, if the electronic file would otherwise be gathered as part of the producing party's collection, both the electronic file and the hard copy shall be produced.

5.    **SEARCH**

The parties agree that in responding to a Fed. R. Civ. P. 34 request, they will meet and confer about search terms and other methods that a party may choose to implement in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.  At least 96 hours prior to any such meet and confer, the requesting party shall propose search criteria to the responding party.

With respect to ESI, the fact that a document is captured by the application of the agreed-upon search protocol does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. The discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' meet-and-confer process.

6.    **TECHNOLOGY-ASSISTED REVIEW**

The parties shall not rely on any form technology-assisted review, such as predictive coding, to limit the scope of review for responsive ESI without first providing notice to the other parties and resolving any disputes regarding the use of such technology-assisted review.  This notice shall contain a description of the methodology to be used for such technology-assisted review.  The parties agree to cooperate in good faith to reach an agreement regarding the methodology to be used for such technology-assisted review.  In the event that the parties cannot reach an agreement, the party proposing to use technology-assisted review shall move for and obtain a protective order prior to using it.

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND OTHER DOCUMENTS

## 7.  **PRODUCTION FORMATS**

ESI shall be produced according to the following formatting standards. Family structure will be maintained in productions and identified by the fields in Section 7.D below.  All attachments shall be produced if a family member is deemed to be responsive, unless otherwise excluded from production. Notwithstanding the foregoing, Defendants may redact non-responsive attachments that they in good faith believe reflect particularly sensitive information where (a) the redactions are clearly reflected in the production materials and (b) there is a table of contents or other information on the face of the document that provides plaintiffs with notice of the subject matter of the redacted information; provided, however, that plaintiffs reserve all rights to request production of any redacted non-responsive attachments if they have a good faith basis to believe that such materials may lead to the discovery of admissible evidence.

### A.  **Images**

- Each image shall contain a single page.
- Each single image shall be produced as a separate file.
- Each image shall be produced in 300 DPI black-and-white Group IV TIF format.
- Upon a party's request for color images of specifically identified documents, color images shall be produced in JPG format.
- Filenames should be of the form:
  <Bates num>.<ext>
  Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (*e.g.*, .tif).
- All TIF images shall be produced in a folder named "IMAGES", which shall contain sub-folders named "0001", "0002", etc.
- Each sub-folder shall contain no more than 3,000 images.
- Images from a single document shall not span multiple sub-folders.

7

### B. OCR or Extracted Text

- Each document shall be produced with a separate, single OCR file covering all of the document's pages.
- Each page within the OCR file shall be separated by a form feed character (*i.e.*, decimal 12, hex 0xC).
- OCR filenames shall be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.
- All OCR files shall be produced in a folder named "TEXT".

### C. Load and Cross-Reference Files

- Load files in either *.DAT or *.CSV format shall be provided.
  - The first line of each DAT or CSV file shall contain the column/field names (see Metadata Fields, below).
  - Each row in each DAT or CSV file shall have the same number of columns/fields (empty values are acceptable).
  - Each value in each DAT or CSV file shall be enclosed by þ (ASCII code 254, hex FE, Latin small letter thorn).
  - Each value in each DAT or CSV file shall be separated by ¶ (ASCII code 182, hex B6, Paragraph sign).
- Cross-reference files in either *.LOG or *.OPT format shall be provided.
  - The LOG or OPT files shall be image cross-reference files and shall link images to a database.
  - The LOG or OPT files shall be comma-delimited files consisting of seven fields per line:

    [PageID],[Volume],[Path]\[FileName],[DocStart],[Folder],[PageCount]
  - There shall be a line in a LOG or OPT file for every image in the database.

- All Load and Cross-reference files shall be produced in a folder named "DATA".

### D. Metadata Fields

With the exception of the fields for DocBeg, DocEnd, PgCount, Confidentiality designation, Notation of Redaction presence, Text Link, and DocLink, these fields apply only to data maintained in electronic format, and with the exception of the field for Custodian, will be provided only to the extent that they are contained in the original documents:

- DocBeg (Beginning Bates number)
- DocEnd (Ending Bates number)
- PgCount (Page Count)
- AttachBeg (Begin Attachment(s))
- AttachEnd (End Attachment(s))
- Family (Parent/Children) Bates Range
- Custodian (Last Name, First Name)
- Duplicate Custodian (Last Name, First Name) (multiple entries separated by "; ")
- Document Title, unless the document title has been redacted
- Document Date (date sent for e-mails; latest chronologically saved date for electronic documents) MM/DD/YYYY
- Document Date_GMT (equivalent GMT date/time)
- Date Created (date the document was created) MM/DD/YYYY
- Subject (subject line for e-mails)
- Author (will be blank for emails)
- From/Sender
- To/Recipients (multiple entries separated by "; ")
- CC (multiple entries separated by "; ")
- BCC (multiple entries separated by "; ")

9

- Source File Path
- MD5 or SHA1 Hash for Native Format Documents (used for de-duplication, if any)
- Confidentiality designation (if applicable)
- Notation of Redaction presence (if applicable)
- Text Link
- DocLink (or NativeLink, used to provide path to file as produced in native)

**E.      Production of Certain Documents in Native Format**

- Except as specified in this section, all documents shall be produced in TIF format.  Aside from the document categories noted in this Section 7.E, the parties will meet and confer to discuss any requests for the production of documents in native format on a case-by-case basis where good cause exists for such request.
- All Microsoft Excel files will be produced in native format, except that Excel files that have been redacted will be produced in TIF format, with OCR and metadata when available.
- All audio, video, or any other file types that cannot be converted to TIF will be produced in native format.
- Each document produced in native format shall be produced as a separate, single file.
- To the extent a document is produced both in native format and as a TIF, the parties will use the TIF version as an exhibit in depositions, briefs, hearings or at trial.  The parties will meet and confer to discuss any requests for the use of documents in a native format on a case-by-case basis.
- Filenames for documents produced in native format shall be of the form: <Bates num> <Confidentiality>.<ext>
  Where <Bates num> is the BATES number of the first page.
  And where <Confidentiality> is the document's confidentiality designation

10

under the protective order entered in and governing the Actions ("Protective Order"), as follows:

     Nonconfidential (or, alternatively, including no confidentiality designation if the document is not confidential)

     Confidential

     Highly_Confidential

- A single-paged TIF placeholder (reading "Document Produced Natively"), with the appropriate production BATES and confidentiality stamps, shall be produced corresponding to each native file.

**F.    Delivery**

- Productions will be delivered to receiving counsel on CDs, DVDs, or hard drives, or by FTP.

- Media volume names will have both (a) the volume number assigned to that production by the producing party; and (b) the bates range of the documents included in that volume.

## 8.    PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding possibilities for phasing the production of ESI.

## 9.    DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not, in and of itself, a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

For any privileged or work-product-protected documents recalled pursuant to

11

the clawback procedure set forth in the Protective Order, or any similar mutually

agreed upon clawback procedure, the receiving party shall—in addition to the

clawback procedures provided in such Protective Order or any similar mutually

agreed-upon clawback procedure—ensure that all electronic copies of each such

document are appropriately removed from the receiving party's database or other

review system and shall confirm such removal to the producing party in writing.

## 10.  PRIVILEGE LOGS

Within a reasonable period after each production of documents, a producing

party shall serve opposing counsel with a privilege log relevant to that party's

previous production of documents.  Each producing party shall produce its final

privilege log within 45 days prior to the close of fact discovery, absent good cause

shown or mutual agreement of the parties.

Communications involving counsel that post-date the filing of the complaint

need not be placed on a privilege log.  Communications may be identified on a

privilege log by category, rather than individually, if appropriate.

## 11.  CONTINUING OBLIGATIONS

The parties will continue to meet and confer regarding any search process

issues as necessary and appropriate, including agreeing to modify any of the dates

and time frames set forth in this protocol.  Nothing in this protocol, or the

subsequent designation of any search terms, shall operate to limit a party's

obligations under the Federal Rules of Civil Procedure and applicable decisional

authority with respect to discovery obligations other than the search for and review

of potentially relevant ESI.  Furthermore, nothing in this protocol shall operate to

limit a party's obligations to produce responsive information which it has collected.

Nor shall it limit the continuing production obligations of Rule 26(e) of the Federal

Rules of Civil Procedure.  This ESI protocol does not address or resolve any other

objection to the scope of the parties' respective discovery requests, and it does not

1  prevent any party from undertaking searches of its own ESI for its own purposes at

2  any time.

3  **12.  <u>MODIFICATION</u>**

4          This ESI Order may be modified by a further Stipulated Order of the parties,

5  as entered by the Court, or by the Court, for good cause shown.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


DATED:  October 10, 2016


*s/  Mark M. Seltzer*
Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
mseltzer@susmangodfrey.com


Howard I. Langer
LANGER, GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Fax: (215) 320-5703
hlanger@langergrogan.com


Scott Martin
HAUSFELD LLP
33 Whitehall Street
14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

*Co-Lead Plaintiffs' Counsel*

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**

DATED:  October 10, 2016


*s/  Beth A. Wilkinson*
Beth A. Wilkinson (admitted *pro hac vice*)
WILKINSON WALSH + ESKOVITZ LLP
1900 M Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com

Sean Eskovitz (Bar No. 241877)
WILKINSON WALSH + ESKOVITZ LLP
11726 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005
seskovitz@wilkinsonwalsh.com

Neema T. Sahni (Bar No. 274240)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Suite 1500
Los Angeles, CA 90067-6045
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
nsahni@cov.com

Gregg H. Levy (admitted *pro hac vice*)
Derek Ludwin (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
glevy@cov.com
dludwin@cov.com

*Counsel for Defendants National Football League, NFL Enterprises LLC, and the Individual NFL Clubs*

15

Case 2:15-mi-02668-BRO-JEM Document 198-2 Filed 10/10/16 Page 16 of 16 Page ID
#:3080
Case 5:23-mc-80213-NC Document 1-2 Filed 08/31/23 Page 60 of 61

DATED: October 10, 2016


_s/ Tammy A. Tsoumas_
Michael E. Baumann (Bar No. 145830)
Melissa D. Ingalls (Bar No. 174861)
Robyn E. Bladow (Bar No. 205189)
Tammy A. Tsoumas (Bar No. 250487)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
michael.baumann@kirkland.com
melissa.ingalls@kirkland.com
robyn.bladow@kirkland.com
tammy.tsoumas@kirkland.com

_Counsel for Defendants DIRECTV, LLC and DIRECTV
Holdings LLC_

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND OTHER DOCUMENTS**

1    FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

2        DATED:_____

3

4

5        Hon. John E. McDermott
6        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS**