MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150

[Additional Counsel on Signature Page]

*Plaintiffs' Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE'S "SUNDAY TICKET" ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Ninth Inning Inc. dba The Mucky Duck et al. v. Google LLC*, Case No. 5:23-mc-80213-NC | Case No.: 5:23-mc-80213-NC<br><br>(MDL Case No. 2:15-ml-02668-PSG (JEMx); pending in C.D. Cal.)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NON-PARTY GOOGLE LLC**<br><br>Judge: Hon. Nathanael M. Cousins<br>Date: September 13, 2023<br>Time: 11:00 A.M. |

Plaintiffs seek by this motion a discrete subset of the documents requested in their subpoena: Google's internal documents reflecting the various proposals and counterproposals it exchanged with the NFL regarding the rights to Sunday Ticket. These documents bear directly on Plaintiffs' antitrust challenge to the NFL's ongoing contractual restraints on the broadcasts of NFL games. Plaintiffs claim—supported by the evidence—that the NFL has not only limited access to game broadcasts but also restricted the types of game packages offered on Sunday Ticket and demanded that those packages be priced at levels that deter fans from subscribing. Plaintiffs thus seek documents which relate to those restrictions—on price, game packaging, and subscriber numbers.

Evidence that the NFL placed these restraints on the YouTube version of Sunday Ticket is unquestionably relevant to the underlying class action. In certifying an injunctive relief class, the MDL court stated that "the challenged conduct driving this antitrust case remains ongoing," and referred specifically to the YouTube agreement. MDL Dkt. 894 at 21. The MDL Court has twice held that the negotiations in question are relevant to the case, and authorized Plaintiffs to pursue the discovery they seek here.

Unable to challenge that relevance, Google tries to brand Plaintiffs' requests as "speculative," "unduly burdensome," and "competitively sensitive." None of those arguments withstands scrutiny. There is significant evidence that the NFL imposed price, game-packaging, and subscriber restrictions on its prior partner, DirecTV, and that the NFL indicated to Google's rival bidders that those restrictions must carry over to the next contract. Plaintiffs' narrowing of their request to Google's internal documents over a nine-month negotiation period moots any argument about undue burden. And Google provides no evidence that discovery about this already-consummated deal is the kind of proprietary information that merits special protection.

*First*, Plaintiffs' contention that Google and the NFL discussed extra-contractual restrictions on Sunday Ticket is based on documentary evidence that the NFL sought to impose these restrictions on DirecTV *and* other potential partners.[1] As Plaintiffs stated in opposition to the NFL's summary judgment motion, "[the NFL] Defendants have been upfront that they insisted

---

[1] Under the operative protective order in the MDL Court, Plaintiffs cannot share with Google confidential documents produced by the NFL or any other third party. Plaintiffs will provide such evidence to the Court for an *in camera* review upon request.

1
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL GOOGLE, NO. 5:23-MC-80213-NC

1  Sunday Ticket be sold at supracompetitive 'premium prices'" and "discovery has revealed that the
2  NFL's claim that it plays no role in the price or composition of the Sunday Ticket package is false,"
3  despite contractual provisions that suggest otherwise. MDL Dkt. 964 at 7, 22. Unlike the subpoena
4  for plaintiffs' bank records in *Shinedling v. Sunbeam Prod. Inc.*, 2013 WL 12142945, at *3 (C.D.
5  Cal. July 26, 2013), a wrongful-death action about a defective heater, Plaintiffs have far more than
6  a "scant basis" to believe that the NFL discussed these same restrictions with Google. The requested
7  discovery also seeks additional context about the implicit restrictions on price and subscriber
8  numbers that *are* reflected in the YouTube-NFL agreement. *See* Mot. at 8-9. The three presentations
9  that Google has produced to date may refer to these contractual provisions, but they do not disclose
10 the back and forth about how those terms were reached, or what alternatives were discussed.

11    *Second*, Google has not demonstrated that performing targeted searches on six named
12 individuals over a nine-month period would constitute an undue burden. As recognized by the
13 caselaw cited by Google, undue burden is determined by "such factors as relevance, the need of the
14 party for the documents, the breadth of the document request, the time period covered by it, the
15 particularity with which the documents are described, and the burden imposed." *Moon v. SCP Pool*
16 *Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Each factor favors disclosure here. Google bases its
17 claims of undue burden on a separate issue: Plaintiffs' proposed number of custodians. But Google
18 never raised this issue with Plaintiffs and cites no caselaw that justifies denying discovery on that
19 basis. The court in *Duong v. Groundhog Enterprises, Inc.*, 2020 WL 2041939, at *3 (C.D. Cal. Feb.
20 28, 2020) did not, as Google argues, find a subpoena unreasonable because of an excessive number
21 of custodians.[2] The *Duong* court instead relied on a sworn declaration that satisfying the request
22 for three years of communications between the subpoena recipient and a party to the underlying
23 litigation would take several weeks and cost thousands of dollars. *Id.* at *9. Google has offered no
24 such evidence here, nor does it explain why searching the emails of a mere six relevant employees
25 would be unduly burdensome. Nor would those searches be cumulative of existing discovery. In
26 contrast to *Duong* and *LegalZoom.com v. Rocket Lawyer Inc.*, 2015 WL 12832823, at *2 (N.D.

---

28 [2] Plaintiffs only agreed to limit their search of NFL custodians based on the NFL's representation that the three individuals in question would have been party to **all** relevant discussions. Google, however, has never been willing to negotiate the scope of custodial searches.

1  Cal. Mar. 23, 2015), Plaintiffs have taken steps to ensure that "Google [is] not reproducing
2  significant materials already produced by the party defendant." Plaintiffs narrowed their request to
3  Google's internal documents, evidence that is by definition unavailable elsewhere.

4      *Third*, Google makes no attempt to make the "strong showing" that the information
5  Plaintiffs seek is commercially sensitive, as Google's own cases state is required to invoke the
6  additional protection of Rule 45(d)(3)(B)(i). *See Edwards v. California Dairies, Inc.,* 2014 WL
7  2465934, at *4 (E.D. Cal. June 2, 2014) ("Trade Secret or commercially sensitive information must
8  be important proprietary information and the party challenging the subpoena must make a strong
9  showing that it has historically sought to maintain the confidentiality of this information.") (quoting
10 *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006)). Unlike the cases it cites, Google
11 submitted ***no evidence*** about its efforts to maintain the confidentiality of its discussions with the
12 NFL or any competitive harm that would result from their disclosure. *Cf. Edwards*, 2014 WL
13 2465934, at *5 (declaration that defendant safeguarded its milk-pricing data and formula); *SPS*
14 *Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 13108018, at *1 (C.D. Cal. June 24, 2019)
15 (declaration that disclosure of confidential research information would cause competitive harm).

16     Nor does Google respond to Plaintiffs' argument that analyses of proposals specific to an
17 already-consummated deal are not "confidential… commercial information" within the meaning of
18 Rule 45. *See* Mot. at 11. Google does not explain, let alone support, its claim that the "discovery
19 sought constitutes YouTube's highly confidential and competitively sensitive commercial
20 information," Opp. at 8. The information sought here is both consumer-facing—*retail* price, game
21 package characteristics, and subscriber numbers—and specific to a product to which Google has
22 ***already*** secured the exclusive rights for the next seven years. Contrast this with the kinds of
23 proprietary information cited in Google's cases. *E.g., GreenCycle Paint, Inc. v. PaintCare, Inc.*,
24 2018 WL 1399865, at *3 (N.D. Cal. Mar. 19, 2018) (information about prices Amazon charged
25 defendants and its competitors, and "the scope of Amazon's operations generally"). Google has
26 provided no reason why disclosing its past discussions about Sunday Ticket—a product that is no
27 longer on the market—would cause the company competitive harm.

28     For the foregoing reasons, Plaintiffs' motion should be granted.

| | | |
|---|---|---|
| 1 | Dated: September 11, 2023 | Respectfully submitted, |
| 2 | | By: */s/ Marc M. Seltzer* |
| | | Marc M. Seltzer |

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Tyler Finn (*Pro Hac Vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340

*Plaintiffs' Co-Lead Counsel*